Your argument next in case 2249, Lora v. United States. Mr. Rosenberg. Mr. Chief Justice, and may it please the Court, subsection 924J does not include or incorporate a bar against concurrent sentences. The government admits that at common law and under sentencing law, the default was to allow judges' discretion to sentence concurrently or consecutively. The government also admits that standing alone, subsection 924J does not bar concurrent sentences. What the government says is that the bar of subsection 924C1D2 applies, but that bar specifically applies only to sentences, quote, imposed under this subsection. That is subsection C, not another subsection such as subsection J, and that distinction is compelled by this Court's precedent in Kuhn's Buick. Moreover, there is nothing in the penalty provision of subsection J that refers to subsection C. Indeed, Congress enacted subsection J as a new subsection, not as a part of subsection C. And it makes sense that there is discretion under subsection J. J1 primarily was concerned with imposing the death penalty for a murder by the use of a firearm and doesn't implicate consecutive sentences. And J2 has a wide variety of conduct from involuntary manslaughter to voluntary manslaughter. The government's answer to all of this is that somehow subsection C is wholly incorporated into subsection J by implication. But that can't be right. Nothing in the text supports that, and it creates some possibilities. For example, voluntary manslaughter with a machine gun has a mandatory minimum penalty under subsection C of 30 years, but a maximum penalty of 15 years under subsection J. They can't coexist. This Court should hold that subsection J means what it says and reverse the Court below. I welcome the Court's questions. What do you do with the government's argument that seems to suggest that it's simply an accumulation of the penalties, an aggregation or increase of the penalties under C? It's not just that. And the reason is it defines a separate crime, right? So there are additional elements, the element of a death in subsection J. It's not just an enhanced penalty provision. It actually creates a new crime. And if it didn't do that, you would run into the constitutional problems we discuss in our brief, because you have to have the additional element of a death proven beyond a reasonable doubt by the jury. How could this have been written to come out in the government's favor from your perspective? It could have been written a lot of ways. So number one is Congress could have said that section C in C1D2, they could have said that the bar applies to this section, not subsection. Subsection J could have referred back to subsection C or C1D2 in the penalty provision, which it didn't do. I suppose there are other ways that Congress could have written it as well. I mean, Congress could have included subsection J in subsection C at the outset, and it didn't do that. And it was very important, I think, if you look at the history, that Congress really wanted to make a special emphasis in J that it was doing something new, right? It was adding the death penalty for the use of a firearm. It was adding this really pretty broad variety of conduct in J2 for manslaughter. And it purposefully did not include it in subsection C. And so the only, I think, natural conclusion that we can draw is that Congress did have a reason for doing it separately, and we believe that the text of that subsection really controls here. It's right, though, isn't it, that a conviction under subsection 924J, you can't get one unless you prove beyond a reasonable doubt a violation of subsection C? That is true, that the underlying factual elements of having a drug trafficking crime or a crime of violence do have to be proven. I would just add, though, that it's not the same thing as actually charging somebody under subsection C, right? And so the government in the ordinary course does not charge under both subsections. It hypothetically could, but it usually doesn't. And so it's different from a situation where a criminal defendant was charged under C and charged under J. What is the substantive difference? And the government has to prove the C violation beyond a reasonable doubt. The substantive difference is that the defendant isn't convicted under C. Oh, I know that. I'm not sure that is substantive as opposed to technical in terms of whether you're going to be charged under C or not. If you're charged under J, you still have to prove all the elements of C. Well, the factual elements of the generic C crime, not the more specific ones of the subcrimes. But yes, that is true. That is true. But we don't think it moves the needle for the government for the reason I was getting at, is that it's still not a conviction under C because the only indictment, charge, conviction, and sentence was imposed under J rather than under C. But I think your factual point is absolutely right, Mr. Chief Justice. Perhaps the text of the provision dooms the government's position. But they do have, and that's a question that we can talk about, but they do have this argument about what Congress had in mind. Suppose that someone during a drug trafficking offense shoots somebody and the person doesn't die. So that's a violation of C, right? And that cannot be made consecutive to the sentence on the underlying drug trafficking offense. Under C. Under C. That's correct. But then if the person dies and then the charge is under J, the sentence could be made concurrent. Well, it depends on how it's charged, right? If you're saying that the person was injured, charged under C, convicted under C, then later dies? No, no. Dies before the case is tried. Yeah. But while the person is lingering in the hospital, all the government, the government has potential C conviction, which cannot be made concurrent. Right. But if the person dies, then it can be made concurrent. Right. And the government's argument is this makes no sense. Congress couldn't have possibly wanted a result like that. What's your answer to that? Well, I think the first answer is that the person could be charged with a death penalty that is much more severe. And number two, the whole issue of concurrent or consecutive sentences is irrelevant. So I think that's part of what may have been going on with Congress, is they put this as a separate subsection, realizing that the death penalty was kind of a unique special circumstance. I also think that there are, particularly in the involuntary manslaughter area, and we included a few examples of this in our brief, where you would very much like to have discretion in crimes where there's not much of a mens rea to cause death. But because death was caused, there's probably going to be a fairly high or somewhat higher penalty anyway, and you may not want to run it concurrently or rather consecutively with a gun charge, because you may have somebody in those circumstances who had little to no mens rea in an involuntary manslaughter situation going to jail for 20 or 25 or 30 years. And so there is some of that in there as well. But I think probably the primary concern was adding the death penalty, and it didn't make a whole lot of sense to add a bar on concurrent sentences when you're introducing the death penalty. They weren't assuming, though, that all the crimes would be committed under J would be death penalty by any stretch. Right. That's correct. So it would still have effect in all those other cases that would still be committed under J. It would, but remember, all we're saying is it preserves discretion. In an appropriate circumstance, a trial judge absolutely can still sentence consecutively. Right. I'm just getting to the point. I tend to doubt Congress really intended your result. Well, I So I take the heroic effort to explain why Congress might have wanted to get to this result. I think your better argument for me is that's just what it says. Well, I would agree with this. In this respect, Justice Kavanaugh, I do think the textual argument is the strongest argument here, and I think it's really sort of a dispositive argument because the text says what it says, and it's really not susceptible of the government's interpretation, particularly not the position the government took in its brief. I mean, I suppose there were other ways that you could potentially try to argue this, but to argue that subsection C is entirely incorporated into subsection J, it not only conflicts in the way I've said, but it violates that principle that you're not supposed to, I guess, import elephants through mouse holes. And in the few words that says, that sets forth in the prefatory phrase that, you know, in the course of violating subsection C, that means that I think we counted as like 700 words of subsection C automatically comes into subsection J. Well, with respect to the intent, though, I mean, don't you also have the argument that the statute actually in J increases the maximums, that it – yes, it doesn't necessarily have or specifically incorporate the floors that C has, but Congress sometimes also expresses its intentions with respect to the seriousness of offenses by making the statutory maximum higher. Yes. Isn't that also what's going on here? I think that's absolutely correct, Justice Jackson, yes. And that is another element to this. So it doesn't – it's not necessarily the case that your position leads to the view that it's sort of nonsensical because Congress was pointing to a more serious offense and giving lighter penalties. Correct. I think that's absolutely right. I think it's the full gamut. And, again, because of that, because of all of those features of subsection J, I think that just suggests having the discretion to modify the sentences where appropriate. But, again, in many of these cases, I would think a judge would sentence consecutively, wouldn't use his or her discretion to sentence concurrently, but there are those sort of rare circumstances where that would occur. And then, of course, the sort of elephant in the room, the death penalty situation where obviously we wouldn't be having consecutive sentences. Can I ask you a question about section C1C, capital C? Okay. Which is on 2A, the addendum to the SG's brief, and the provision says, quote, in the case of a violation of this subsection that occurs after a prior conviction under this subsection has become final, then very stiff mandatory minimums apply. Yeah. Okay? So two situations, and it concerns whether there's first a C violation and then a J violation, or first a J violation and then a C violation. So in the first situation, there's a conviction under C. So this would count because it is obviously a conviction under C, okay, in the case of a violation of this subsection, which occurs after a prior conviction under this subsection. So the prior conviction is under this subsection. So that counts. And then the J conviction would also count because this would be a conviction that is, quote, a violation of C, right? I'm not sure that it would. I would say this. I think that there is some additional ambiguity in this provision potentially. I don't think it's necessary to resolve this case. I'm not sure it would, though, because my point that I was making to the Chief Justice's question is that we don't think, although, again, I don't think we need to decide this, we don't think that a conviction under J is also a conviction under C, even though those prefatory elements of C do have to be found. And so I think a good criminal defense lawyer might argue in that circumstance that it wouldn't apply because the conviction, at least the conviction under J, wouldn't have been a conviction under this subsection because it wasn't a conviction under C. Well, J says a person who, in the course of a violation of subsection C. Yeah. Causes. So you don't think that this would be in the course of a violation of subsection C? I think it's arguable, but I think that there is also an argument that it isn't because, unless there was actually a conviction under C, I'm not sure that that was actually a conviction under C. But you're reading an awful lot into the use of in violation as opposed to under. But here you seem to be reversing course. In any event, if that's — if it — if it is as I described, so that there would be — the mandatory minimums would come into play in that situation. Now we reverse the sequence. First, there's a J conviction. And you say that's not under C, so it doesn't count. And then it's followed by a C conviction. Well, there would be no mandatory minimums there. Under this provision. But there would be other mandatory minimums. But not under this provision. That's correct. So you have this weird situation where whether or not the sentence can be consecutive or concurrent depends on the sequence of the violations, whether C comes first or J comes first. Yeah. And that's why I think my answer is that while I understand where you're coming from, and I do think the prosecutors could make that argument, I think there's also room to read the statute to say that this — this particular provision isn't triggered unless you've actually had a conviction under C. And doesn't the prosecution control that? I thought — I thought it depended on what was being charged. It does. Right. So if they charge a C — a J violation, although they might have to prove the predicates from C, if the only thing on the table is J because that's the way they've charged it, then they're stuck with the penalty structure that attaches to J. Right? I agree. Yes. And if they charge it as a C, I mean, they're sort of — they're making the decision up front as to which set of penalties they intend to argue for. Right. Right. And as you pointed out, you know, subsection J has higher maximums in a variety of ways, and that may be one reason why the government would want to prosecute under J. But surely the government knows, and then they make a decision. Do we want to make this a J or a C? Do we want to charge both? And then when we get down to brass tacks in terms of which one, sort of like a lesser included offense scenario, we then decide. But it seems like the government has a lot of control over which one of these penalty regimes take place in any given case. They do. Is that your argument? So that if your argument is dependent on the fact that C was not mentioned in the indictment and is not mentioned in the judgment of sentence? So if they charged in violation of C and J, and that's what the judgment of sentence said, this would be a different case? Is that your argument? I don't understand that to be an argument. Well, let's put it this way. I don't think it's necessary to decide the case, but I think in that circumstance, you would have to then resolve this question of whether you actually have to charge under C, and we think you would have to charge under C to get the sort of other benefits of C. I'm not sure I understand. So I have a block on this. Would you like us to rule? Do you think we should just say the government decided it wasn't going to mention C in the indictment and it's not in the judgment of sentence, therefore that's the end of the case? I think that would be a very reasonable way to decide the case, yes. But you're suggesting that if the next time around with the next person, the government had said C and J, what would follow? I think that's a more complicated situation. The government says they can't do it, right? The government says in their brief steadfastly they think there's a double jeopardy problem doing it. Our answer is that's not nearly as clear as the government seems to say, but they seem to think it. So I think at that point the onus would be on the government to try to justify why they would be able to do both, contrary to what they've said, you know, for at least 10 years apparently. But I do think that's a different circumstance. It's not this case. And I think as Justice Jackson suggested, there are good reasons to choose either C or J in an appropriate case, and that's what the government has done. But hypothetically, you know, there may be circumstances where they try to charge under both, and then that question has to be addressed. Actually, this issue of which you charge under is up to the government. And really the only time they have to make a choice is when they're seeking the death penalty, correct? Because when you think about it, a life sentence is permissible for virtually all of the crimes that are being charged that cause a death, correct? Usually, yes. And I think there may be a few rare circumstances where the maximums elsewhere in J might come into play. But, yes, usually I think it's the death penalty is the main reason. And so the government can charge even a death under C if it doesn't intend to seek the death penalty? It could potentially try to do that, yes. Suppose a person is charged under J too, a person who in the course of a violation of subsection C causes the death of a person through the use of a firearm shell if the killing is manslaughter as defined in section 112 be punished as provided in that section. So in that situation, is the person convicted under J and 1112 or just under J? I think it's just under J. But J then specifically incorporates that penalty provision which gives the maximums for involuntary manslaughter and voluntary manslaughter. For voluntary, it's 15 years. And for involuntary, it's 8 years. But you wouldn't consider that person to have been convicted under 1112 because they wouldn't have been charged, tried, and convicted under 1112. It would just be J. Do you think it's ever possible for somebody to be convicted under two, under the operation jointly of two separate provisions? Potentially, if it is clearly charged that way. Maybe in the lesser included offense instruction situation. But even there, I think you would have to have a verdict that made it clear that the defendant was being convicted under the lesser included offense as well. If it's charged that way. It's very common for somebody to be charged with an offense in violation of 18 U.S.C. Section 2 and another provision. So there, under what provision is the person convicted? If it's charged that way, I mean, again, it depends on the actual circumstances of the case. But I think there, you definitely have to have the charge under the provision you're talking about. Again, I think a criminal defense attorney would argue that there has to be something in the verdict form that makes clear that they're being convicted under both statutes. But certainly, it helps if you're being charged under the statute here. They're not charged under C. They're not tried under C. They're not convicted under C. So you can't say that this was a sentence imposed under C. Anything further? Thank you, counsel. Ms. Ross. Thank you, Mr. Chief Justice, and may it please the Court. Section 924J1 provides enhanced federal penalties for the most serious Section 924C offenders, those who not only bring a gun to a crime of violence or drug trafficking crime, but actually take it out and use it to kill someone. In doing so, Section 924J does not eliminate the basic sentencing requirements of Section 924C. Under ordinary principles of statutory interpretation, this Court should harmonize Sections 924C and J. And under the Court's Blockberger precedents, the most natural way to do that is to read Section 924J to create an aggravated version of the same Section 924C offense. In cross-referencing Subsection C, Section 924J sweeps in all of Subsection C's provisions. It does not, as my friend suggests, pick and choose particular factual elements. And Section 924C states that its mandatory minimum sentence shall apply to any person who engages in the basic offense conduct. As the questions this morning have indicated, Petitioner plainly falls within that category. Section 924J then requires that the Court consider whether to add additional punishment for the homicide. Whatever overall sentence the Court chooses, it is therefore imposed under both Sections 924C and J, and the consecutive sentencing requirement applies. Now my friend says that this reading causes conflict between the mandatory minimum sentences in Section 924C and Section 924J's incorporation of the punishments for murder and manslaughter, and in particular the involuntary manslaughter provision he was discussing this morning. But those provisions can be harmonized in the way I've just described. Indeed, Section 924C-5 on page 3A of the government's appendix necessarily works this way. It includes its very own 15-year mandatory minimum for using armor-piercing ammunition, and then adds on top the same murder and manslaughter penalties nearly verbatim as Section 924J. Just as there's no internal inconsistency in Section 924C-5, there's no internal inconsistency in the government's reading of Sections 924C and J. I welcome the Court's questions. What do you do with the language in 924C that refers to sentences, it says, notwithstanding any other provision of law, no sentence imposed on a person under this subsection? I would understand your argument if it said section, but subsection. So how do you reconcile that with what you just said? Sure, Justice Thomas. I want to first take the under piece of that question and then explain why we think this section was not a way to write the statute. So for under, we think, as this Court explained to the National Association of Manufacturers, under is a chameleon. It has to take its meaning from context. In that case, the Court described the word under as meaning by reason of the authority of. We think it's clear here that Section 924C is providing at least some of the authority for the 924J sentence. It's providing the factual elements, as my friend explained, although I think we disagree about precisely which ones. And in our view, it's providing the mandatory minimum penalty as well as the consecutive sentencing requirement itself. And so we do think that a sentence that is imposed for a violation of subsection J, which necessarily requires, as the Chief Justice was noting, a jury to find the elements of C, is imposed under both subsections. Well, but why is that, Ms. Ross? I mean, suppose that J had not said in the course of a violation of subsection C but just repeated all of subsection C's language. Then what? So I think that would be a much more difficult case and my friend would have a much better argument. I think the problem with his argument is that what he would like you to do, if you look at page 1A of the government's appendix, is look at paragraph C1A, start reading about two and a half lines down where it says any person who, read all the way through there, stop at the penultimate line of that sort of lead paragraph where it says shall, and incorporate only that bracketed content. That's, of course, not what section 924J says. It refers to subsection C as a whole. It doesn't reference paragraph C1A. It doesn't reference any of the particular elements. But it also doesn't say if you're convicted of subsection C. I mean, I think that's the problem for your argument. It says in the course of a violation of subsection C. And so I don't understand why the government believes in this case that it's entitled to the penalty structure that comes with section C if a person is convicted of C when J doesn't say, and it could easily have said, any person who's convicted of subsection C, etc. So, Your Honor, I think it is certainly true that Congress could have been clearer in this provision. My point was simply that it also doesn't say what petitioner is suggesting. We think the best reading of the statute is that C provides the basic elements of the offense. It provides the basic sentences. And then J sort of comes in to say, and when there's a death, we're going to add these other penalties. And I think that's consistent, as I was saying in my introduction, with how C5 works. I think it necessarily has to work that way. And so we think there's nothing wrong with sort of taking these provisions as they come, walking through C before you get to J. So what do you do with the fact that J was actually enacted at a different time than C? And that suggests to me that Congress was careful and thoughtful about the placement of J. They could have put it in C to accomplish what you've talked about, but they didn't. And J has its own penalty provision, not specifically cross-referenced in any way to C's penalty provisions. So I guess it just sort of seems to me that the enactment history also undermines the government's view that J is supposed to be ordering some sort of aggregation of the C penalties. Certainly. So we actually think that the history is quite helpful for us, and if I could just explain why, I think there are three really key dates here. The first is that in 1968, Congress enacted this provision C without any concurrent consecutive requirement. A couple of years later, it adds the consecutive sentences bar. And then in 1994, as Your Honor noted, Congress added subsection J. And I think what's really significant at that time is that when Congress did so and it cross-referenced subsection C as a whole, subsection C was much simpler than it is today. It involved only three paragraphs, paragraphs 1, 2, and 3. Paragraphs 2 and 3, as today, defined drug traffic and crime and crime of violence. Everyone agrees that those have to come in, that the cross-reference to C and J necessarily includes those. And then in paragraph C1, it included all of the substance of the offense. So it included the base offense elements, it included certain mandatory minima, for example, if a particular type of weapon was used, and it included the bar on consecutive sentences. And I think it's particularly unlikely in 1994 when Congress cross-referenced subsection C as a whole that what it really meant to do was take subsection C2 and 3 and then particular words and phrases out of C1. I think when Congress said subsection C, it meant subsection C. But of course it doesn't say subsection C as a whole. It just says a violation of subsection C. I appreciate that you keep saying that every time you talk about subsection C as it's referenced in J, but that's not what it says. It's correct that it says a violation of subsection C, but if you look at subsection C... Which you can commit without reference to subsection C's cumulative penalties or any penalty, any of the mandatory minimums or anything like that, right? I mean, it's not the government's position that you wouldn't have a violation of subsection C without, you know, the penalty structure. I think that's correct, Your Honor, but I think it's also not true that Congress was sort of focusing on those elements in particular. I think another point that was discussed earlier with respect to what Congress was doing in this provision was, you know, the focus on the death penalty. And while I think that that is obviously something Congress was concerned with when it added subsection J, it's clear that Congress also knew, as Justice Kavanaugh was pointing out earlier, that term-of-year sentences would continue to apply for J violations. That's in the language of J1, of course. And we think that it's just completely implausible that at the time that Congress was enacting this statute, it meant to keep a mandatory minimum consecutive sentence. As this Court explained in Abbott, Congress explained three times over that it's so important that individuals who engage in that base offense conduct receive that mandatory minimum consecutive sentence, but at the same time eliminated that when the person actually takes the gun out and kills someone. It is correct, isn't it, that under your theory subparagraph C5b is superfluous? So, Justice Sotomayor, I think that's respectfully not quite the right way to look at it. I think anyone who was sentenced under Section C5b would have to be sentenced under Section C5a as well, and so you sort of have to take C5 as a whole, and of course C5 because it's providing... But still, why add it? How you kill somebody is irrelevant under your view because they're all going to get the same sentence, so why did Congress add C5b? I don't think there's a good explanation in the legislative history, Justice Sotomayor. I think my best guess is... That's because your reading doesn't treat them separately. You want us to mesh them together. That's the reason why. Petitioner's reading gives a reason. You're absolutely right. If you do it in this way, you're going to get this minimum. If you don't do it in this way, you get the maximum under J alone. So if I'm understanding the question correctly, Justice Sotomayor, I think the difference Petitioner posits between C5b and J is, you know, everybody agrees that C5b has its own mandatory minimum, or excuse me, C5a has its own mandatory minimum, so then he says the work that C5... No, I'm talking about C5b. Right, and he says that the work that C5b is doing is that it is requiring a consecutive sentence, whereas under J that's optional. And respectfully, I just think there's no indication that Congress was seeking to distinguish between these provisions in that way. I think the far better reading is probably that Congress was just trying to be complete and make sure that there was no confusion, that the same penalties that apply in J would still apply if you killed someone through the use of the armor-piercing ammunition. Isn't the truth of the matter here that Congress just made a mistake? Your Honor, if you thought that Congress just made a mistake, particularly, you know, we haven't really discussed the Blockburger question, I do want to get there, but if you thought that Congress made a mistake such that, you know, the right result from the language was that this is all one offense, we have to charge J or C, but when we charge J, when we recognize what Congress recognized is a far more serious offense than we lose the mandatory minimum consecutive penalty in C, you know, I think that might be a case for an absurdity type of construction because it is so implausible, but, of course, we don't think you need to get there because we think that the text and the structure and the history of the statute are themselves sufficient to clarify whatever ambiguity there is here. Why is it absurd? You have a sentence that gives you permission to impose the death penalty. That's a really big difference. We do things, we rule under absurdity where it makes no sense whatsoever. The whole purpose of J was to give the prosecutor even more of a weapon, death. So a couple of points on that, Your Honor. I think, obviously, that is a purpose of J, but I think, as I was noting, you know, there are inevitably going to be term-of-year sentences under J, and in that instance, I think it is quite implausible. You don't even need to get to absurdity. I'd point to this Court's decision in Abbott where it rejected implausible, bizarre results under 924C. It's quite implausible that Congress intended when you actually take the gun out and kill someone with it for a lesser sentence to be possible than when it's simply in the defendant's pocket on that. But was there a... Keep going, I'm sorry. On that, I just wanted to point out, you know, my friend was talking about it makes sense to have discretion, perhaps, in the involuntary manslaughter context. You know, a few points on that. One is that I think involuntary manslaughter here is really the tail wagging the dog. If you look at pages 9 to 10 of Petitioner's reply brief where he's talking about this, you know, most of his examples are involuntary manslaughter. And then on page 23, he's talking about, you know, the physician who is going to prescribe suicide-inducing drugs and he brings his gun because he's concerned that the family is going to violently intervene and then the gun comes off and it kills the elderly patient. I think that's so unlikely that that should not sort of drive the train here. And I think it's also true that even that doesn't make sense because Congress, of course, didn't want discretion when no manslaughter occurred. And so it doesn't make any sense to say you need it when you've committed the base conduct but also committed involuntary manslaughter. I think Congress was generally concerned and is still concerned about what it views as light sentences in cases involving guns. So 924, drug and crimes of violence where guns are carried or used. But if you think about 924-J, do you think Congress was concerned that judges were imposing light sentences when there was a killing as well? So I think, quite frankly, Justice Kavanaugh, Congress was probably concerned that the existing federal murder statute just wouldn't reach this conduct because it applies only in the special maritime and territorial jurisdiction of the United States. And so that, I think, is why you get 924-J as an independent provision. Right, but you want to read in the no concurrent sentence provision into 924-J. And I realize I'm reconstructing here, but Congress could think, okay, there's a problem with light sentencing in certain kinds of drug-gun cases. But I'm not sure they would have thought there's a problem of light sentencing in cases where there's a killing. So two points on that, Your Honor, maybe three. The first, I guess, which is a non-point, is that I don't have anything specific in the legislative history on this. The second point, I think you could probably always say something like that in mandatory minimum cases. It's sort of self-evidently serious conduct, and therefore maybe you don't need a mandatory minimum, yet Congress goes ahead and does it. And the third point is just that in 924-C-5, I think you could make exactly that argument. And of course, Petitioner agrees that that falls under C and therefore has the bar on consecutive sentences, or excuse me, the bar on concurrent sentences. And so all we think is that when you kill somebody without the armor-piercing ammunition, the same rule applies. But can I go back to the absurdity point? Because I guess I'm wondering the opposite of what Justice Kagan said was, which is, isn't the truth of the matter that we have a different Congress in 1994 than we had in 1968, so that when J was created, perhaps that Congress made a different policy choice about the determination of mandatory minimums versus increasing the maximums? All of that seems perfectly rational to me as opposed to absurd. So can you speak to that kind of thought process? Certainly. I just want to caution. I think we're sort of pretty far into speculating about what Congress may or may not have thought. We really don't have anything on this. True, but you made the absurdity argument, and what that calls upon us to do is to evaluate the extent to which Congress's determination is or is not absurd. And what I'm positing is that a Congress in 1994 that is looking at J and the circumstances that you describe as someone dying in the context of use-and-carry scenarios could have decided, we're not going to put another mandatory minimum in this. Instead, we're going to offer the government the death penalty. We're going to increase, make it any term of years, which means that the government can argue at sentencing. Consecutiveness, the government can argue that this should be really much higher than a 924. We're going to blow the top off of the maximums, and that's the way we want to handle this situation. Why is that absurd? So I think that's just not the way this Court has thought about 924C. If you look at Abbott, I think the Court could have said precisely that in Abbott. It was construing the in addition to language. I'm asking how the Court looks at J, not 924C. Why is it absurd for a Congress that is enacting J to have had a separate penalty structure that did not incorporate the mandatory minimums of C, but instead took care of that circumstance through, as the text says here, giving the death penalty, increasing the maximums, and the like? Again, I think it is just fundamentally at odds. I think generally this Court looks at a statute as a whole, even when pieces are amended at different times. I think that's what the Court did do in Abbott, and I think it would not make sense to say, you know, Congress built on this by allowing the death penalty, but at the same time thinking that a five-year mandatory consecutive term was simply too much. I don't think that sort of holds up as a matter of logic. We have sort of a strange situation here where the petitioner argues, invokes the rule of lenity, but argues that, at least this is what I got from the brief, that it's possible for the government to charge a C violation and a J violation separately. There would be two separate violations. And you on the other side say, no, you can't do that. So could you comment on this? Absolutely, Justice Alito. I appreciate the opportunity to do so. First off, I think you're absolutely correct. I heard my friend this morning say that, you know, the double jeopardy issue isn't as clear as we say. In his brief, I think it's pellucid. I would tell you pages 15, 17, and 22 of the reply brief where he's quite clear that he thinks, as Your Honor mentioned, that we can charge, convict, and get cumulative punishments on both C and J. Now, I think that makes sense if you think these are stand-alone punishment provisions for the reasons I was just describing. It just makes no sense to think that Congress put the government in this catch-22 where, on the one hand, it can, you know, charge what everybody agrees is the lesser offense in C, be guaranteed a mandatory minimum consecutive sentence, but it has to leave on the shelf this provision that Congress clearly concerned about gun murders in the course of 924C violations created. Or, on the other hand, it can charge the J but lose the mandatory minimum consecutive sentence. I think that doesn't make sense, and I think if you come to a reading where you think these are separate penalty provisions, that's actually the best evidence that these are, in fact, separate offenses for Blockberger. We, by contrast, have long taken the position, based on this Court's Blockberger jurisprudence, that these are one offense. Generally, when you have a greater and a lesser included offense in the same section of a statute, we do, you know, this Court's cases have treated those as the same offense, and so we reconcile the statute by saying it's one offense, and that means that, you know, the C penalties come along with the greater J offense. If the Court disagrees with us on this, I think this is extremely important in practice. I think it has to, or it should say that these are separate offenses for purposes of Blockberger because, for the reasons I was just noting, you know, it really makes no sense to have one offense, but the government has to choose. And then the government, going forward, will charge both. That's correct, Justice Kavanaugh, and again... The problem is really retrospective from your perspective because, going forward, you'll charge 924C and 924J in circumstances like this. That's correct, with one wrinkle. You know, we've talked a little bit about what 924J gets us in terms of the... or permits in terms of the death penalty. 924J and 924C are also different for statute of limitations purposes. So 924C is subject to the default 5-year federal statute of limitations. 924J1, at least, as a capital offense, has no statute of limitations. And so there will be cases, quite frankly, this case included, in which the government only can go forward on a J count. If the court would... I'm sorry, go ahead. Go ahead. If you do go with both, aren't you going to be confronted with the problem that your friend talked about, which, for the same offense, you could get one sentence that says to be minimum of 30 years and the other one maximum of 15? I don't think so, Mr. Chief Justice, because I think we're talking about separate counts here. So he's saying that we can bring a three-count indictment, count one is the underlying crime of violence or drug trafficking crime, count two is the C, and count three is the J. And so you would then have those sentences. And I think, to go to Justice Kavanaugh's point, that actually, or perhaps it may have been Justice Alito's point, that actually may not be more lenient in practice because I think, as in this case, you know, the court here had a J in front of it. It, as most, if not all, courts of appeals do, read the J to include the mandatory minimum on C, and it said, you know, I think the C five-year mandatory minimum here is sufficient given the other counts in the indictment. I think you couldn't do that on petitioner's rule if these are separate charges and separate convictions and separate punishments because the separate J offense would require its own sentence, and that sentence would have to be subject to subsection C's consecutive sentencing requirement in the sense that it, like all other sentences, would have to be consecutive to C. So I think petitioner's rule actually is less lenient in a number of cases. If the court were to rule for Mr. Laura on the question presented, on the theory that this language in J in the course of violation of subsection C does not incorporate all of subsection C, and the court were to leave it at that, and the court were to say nothing about the Blockberger question, which isn't really for us in the same way, what would the government do? Would the government then say, okay, things have changed, we're viewing this differently now, we're going to start charging C and J? So I think we might well take that course, Justice Kagan, again, because I think that's sort of the natural consequence of treating the J as not incorporating the C penalties, but I think there's a sort of on-the-ground practical reason why I would counsel the court against doing that, and that's because a number of courts of appeals have precedent on the Blockberger question, and so I think, and generally holding in line with the government's view that they're one offense, but also holding that J incorporates C's penalties, and so I think if you dismantle half of that without dismantling all of it, we could be in a position where courts of appeals, under their prior panel rules, might not think that they could reverse that precedent and would have to go on bank, and it's just a use of judicial resources that I think is unnecessary given that the parties have joined issue on this question. I think it's well presented in the papers here. Can I just be very clear? You said you would counsel against us doing, and I want to be exactly sure on what you're counseling us against doing. I appreciate it, and I appreciate the court's indulgence in my counseling anything. You know, I think what the court should not do is hold that Petitioner is correct that the J does not include the C sentencing provisions, but leave open whether this is one or two offenses for Blockburger purposes. Obviously, we also think you shouldn't do that and hold it's one offense for Blockburger purposes. We think if you're going to say, as Mr. Lora argues, that J does not sweep in the C penalties, then we think the court should also make clear, as Mr. Lora argues, that in part because of that, given the intertwined relationship between the two questions, these are separate offenses for Blockburger. But that's not the Blockburger test. I don't understand. So you're suddenly now asking us, as a result of this case, to revisit Blockburger and what it says about when there are separate offenses? No, Justice Jackson. So you've already said that this fails the Blockburger test. That's the government's view. And I understood Justice Kagan to be saying, can we not talk about that in this case, whether it meets the Blockburger test or not, and still rule in favor of Mr. Lora? And you're saying no, but I don't understand why that is. Sure. So we take the Blockburger test as it exists. We think under the Blockburger test, we have the better reading of the statute. We think it's a greater and a lesser included offense. That's normally one offense, but the natural consequence of that is that the penalty provisions of C apply to J as well. All right. Couldn't we disagree with that part of it without revisiting whether it's one or a different offense? You've said two different things in that. I mean, I didn't understand Blockburger to speak to the penalties in this way. So I think one of the clues you might look to in the Blockburger analysis, and we think the clearest clue in this case, if you come out in Mr. Lora's direction, is whether it's a stand-alone penalty scheme or it's incorporating another provisions penalty. And I think that is how the two are related. Now, again... And what's your answer to that question? You say it satisfies the Blockburger test, meaning that they are one in the same, like a lesser included offense, but it also incorporates the other penalty. Is that your view? I might have lost you there, but I think what we say as our front-line position, I want to be clear about this because I think it's extremely important. Our front-line position is that these are one offense for purposes of Blockburger. That is because, you know, J cross-references C. They're in the same section. They're part of the same... You know, they're a greater and lesser included offense. Cases like Brown v. Ohio and Garrett would strongly suggest they're one offense. If they're one offense, we think it is necessarily true that the penalties of C are read into J because all J is doing at that point is adding an additional element, and it's increasing the penalty. Is that what Blockburger says? If they're one offense, then the penalties of one necessarily get imported into the other. That's what I'm asking. I don't think that's what Blockburger itself says. All right, so that would be new if we decided in your favor  in the way you want us to. I don't think that's quite right in the sense that I think subsequent cases in that line look to features of the statute and sort of their level of interdependentness, the two crimes' level of interdependentness or interdependence. And one of those clues, I think, would be the way that the penalty provisions interact. Counsel, I'm having a whole lot of problem here. You just started this section on saying that you couldn't charge 924C because it has a five-year limitation. So we're going to hypothesize that you could have, and if you did, that you wouldn't have violated the Double Jeopardy Clause. That's what you want us to do. To hypothesize that you could have and wouldn't. Justice Sotomayor, I think what we're asking you to do, so let me rephrase this. I think Petitioner was very clear in his briefs that there's no anomaly on his reading. There's no problem with saying that J doesn't incorporate the C penalties because the government can also bring a C charge whenever it can bring a J charge, with the exception of statute of limitations questions, which are sort of on a different level. That hurts you, too, because it makes it different not just in terms of the maximum, but also gives you a greater statute of limitations than C does. So there's a lot of reasons to treat J differently and separately because you're getting two benefits, one, a greater maximum, and second, a longer statute of limitations. I certainly understand that, Justice Sotomayor. Of course, our fundamental submission is that Congress, having given us those things, it's irrational to think, didn't think that at least the mandatory minimum for the base offense was required. Let me go back to Justice Jackson's question. We can't know what Congress was thinking except that it knew to add armor in C, and yet it created J separately. And what it did in J was to raise a statutory maximum and give you a statute of limitations benefit. Of course, it did the same things in C-5. I think the better understanding of C-5 is probably... No, it didn't. It made a minimum of... It didn't. It just added armor-piercing. No, C-5b does give you a maximum sentence of the death penalty and therefore would give you the heightened statute of limitations. Yes, so it could have done it that way, too, and it just didn't. Well, I think the better explanation on C-5 is probably that armor-piercing ammunition is sort of a flavor with the other enhancements that are in C throughout, so machine gun, different types of weapons, things like that. And so C-5 may have been included there. But, of course, I don't have a legislative history cite for you on that. We're all just speculating about what Congress did, what it did here. Maybe we should just go back to the language. Thank you, Counsel. Justice Thomas? You are going to counsel us on how best to write an opinion if we came out in favor of Mr. Lara. And I don't think you quite finished. Thank you, Justice Thomas. So I have tried to explain that I think if you hold that, Jay, you don't walk through C-1st, you don't apply C's Any Person Who language, which we think clearly applies to a person who violates Jay, if you disagree with us on that, then we think you would be saying that C's penalty provisions are not read into Jay, and at that point I think you would explain, as Mr. Lara did in his briefs, that the reason that doesn't create an anomaly where the lesser conduct in C has a greater, in this sense, penalty of a consecutive mandatory sentence is that in fact the government is able to charge both C and Jay separately and to obtain cumulative punishments on each going forward because they are separate offenses. Justice Alito? If we agree with Petitioner, could someone convicted under Jay be placed on probation? Would C-1d-1 apply? So frankly, Justice Alito, I think the answer depends on the classification of Jay as a certain type of felony. I think it is possible, depending on how you sort of squint at the relevant statutes, in an involuntary manslaughter case perhaps, but I think it's just sort of untested. I'm not sure the answer to that question. Justice Sotomayor? Justice Kagan? Just to quickly summarize your answer to Justice Thomas just now, because I want to be very clear on this. If you lose on your main argument and they prevail, then you can, you think, charge both C and Jay, and you will, presumably, and you will defend that against any blockburger or other kind of argument. I think that is likely the case. I don't want to commit the department, because it would obviously depend a bit on what the court's opinion said. I'm not committing you on the policy. I'm just saying you would have the authority to, you think, and you may do so, and you would defend that if you lose on the main submission in this case. I think that's right, Justice Kavanaugh. Blockburger is, of course, a rule of legislative intent. It's a presumption, and so I think, depending on what else you think the legislature intended, we sort of have to readjust and rethink how we've approached this question. Thank you. Justice Jackson. So I guess I don't understand a point about the blockburger, and it's a little... It goes back to what Justice Kavanaugh just said. I heard you say that Mr. Laura's position is that C's penalty provisions are not read in, and the reason why that doesn't create an anomaly is because they are separate offenses. That's his view. Correct. All right. What if we agree that the reason why they don't create an anomaly is first because that's... The text obviously doesn't say they're read in, but setting that aside, they don't create an anomaly because J is still broad enough to allow for the greater penalty. Because the government sets this up as a catch-22, and that's really underlying your blockburger concern. You said earlier, you know, the government would have to leave on the shelf the mandatory minimums in C if it picks J, but I guess I don't understand why the government perceives itself to be losing the opportunity for a higher penalty if it picks J. You still go to court and you still say a killing happened in the context of this carrying an offense, and so, Your Honor, in your discretion to impose the death penalty or the term of years or whatever, we argue that you should give this person more than a person who just would have gotten five years under the mandatory minimum, and as Justice Kavanaugh pointed out, nine times out of ten, you would get it because the court sees a death in this situation and J permits the court to impose a higher penalty for that. So it's not a situation in which by picking J you somehow are relegated to smaller or lesser penalties in a way that might implicate your blockburger concern. So respectfully, Justice Jackson, of course on the frontline textual issue, which I took you to put to one side, we disagree. Yes. Moving to the anomaly point, I think the anomaly is sort of at a finer level of gradation than that. I think it's not just, you know, would a court necessarily reach this result nine times out of ten? We hope that's true, but we think Congress didn't leave it to that nine times out of ten. But maybe they did in J, just not in C. I mean, the only anomaly that you see or that you're pointing to is the fact that in a C situation, Congress sets a floor and doesn't let the court go below, and in a J situation, it doesn't. It gives it a broader range, it throws off the maximum, and you have to argue in a J situation that, Judge, you should give a much higher penalty here, which the government would certainly do, and nine times out of ten, the court would agree. Right, but to go back to where the Chief Justice started this morning, you know, the J necessarily includes the C. Anybody who's convicted of J has been found, not just violated out in the world, but has been found by a jury or agreed in a plea agreement that they violated every element of C. Isn't the only thing that the government is saying is that, and therefore it incorporates the block on the judge's discretion with respect to the floor. That's your only point, because fine, so it incorporates all the elements, but the only real difference between those two from the government's perspective is that in a C situation, the court can't go below five years. In a J situation, they could, but because a J situation involves a death, my question is, under what circumstance is a court actually going to go below the five years? So I think it's not just the mandatory minimum. It's also, of course, the mandatory consecutive nature of the sentence. And if they get death, it doesn't matter, says your friend on the other side. Sure, but I think Congress necessarily knew, both because of the words of the statute and because, of course, the mandatory death penalty had long been held unconstitutional, that there would be term-of-year sentences under this provision, and so I don't think it makes sense to say that Congress thought, you know, we need to make sure there's a five-year at a minimum, and obviously they go up from there, consecutive sentence when someone holds the gun in their pocket, but if they take it out and kill someone, you know, all bets are off because we're going to increase it on the other end. I just don't think that that's the best reading of the statute. Thank you, counsel. Rebuttal, Mr. Rosenberg? I just have five brief points. First of all, my friend on the government side admits that we don't know what Congress's intent really was, but the hypotheticals and anomalies are all resolved effectively by two or three points. One is that discretion still remains, even under our reading, and so in circumstances where someone deserves a harsher sentence, a greater sentence, or consecutive sentences, the judge can certainly do that. And so I think that solves a lot of the problems. Secondly, we go back to the plain text of the statute. It simply doesn't permit the government's reading. There really is no good answer to the text that says, imposed under this subsection, the government talks about the National Association of Manufacturers case, but that case actually supports our position. In that case, the court said that you couldn't say that something that was tangential to or took some meaning from actually arose under a particular statutory provision there. It was Section 1311, and it's the same issue here. Just because Subsection C mentions – excuse me, Subsection J mentions Subsection C, it doesn't mean that the authority for the sentence comes out of Subsection C. In fact, in the Bifuco case that we cited in our brief, the court specifically said that you arise under a specific subsection or section when your conviction, trial, and sentence is based on that subsection. The third point is in respect to C-5B that Justice Sotomayor asked about. I agree with the questions that Justice Sotomayor asked. The point is that the penalty provision of C-5B would be rendered superfluous entirely of Subsection J's penalty provision under the government's reading. And more to the point, if Congress thought that Subsection C was incorporated into Subsection J, it never would have needed to repeat those penalty provisions in C-5. It just doesn't make any sense that that's what Congress was intending to do. The fourth point is that when Congress did major body work to this whole section, I believe in 1998, it left J as separate, and we included later C-5 in C, not in J. And that does suggest a different desire to treat Subsection J, and we've talked about that. Whether it was to introduce the death penalty for the other reasons we've discussed, Congress has had the intent to keep J separate. And then finally, with respect to Blockburger and that thorny nest, I would just say this. This case, while we certainly did brief the issue in part in the briefs, this case really doesn't present the Blockburger question. This is a case where our client could not have been charged under C because of the statute of limitations concern. The lower court didn't address Blockburger. And at the end of the day, it's probably best left to another case to address Blockburger in all of its significance in this context. What we suggest is simply that the court should reverse and hold that Subsection J means what it says, that it does not include the consecutive sentence requirement of Subsection C, and in all likelihood just leave it at that or any other further explanation. But I don't think the Blockburger point is something the court needs to get into. Thank you. Thank you, counsel. The case is submitted.